UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

AUG 0 5 2021

TONY R. MOORE, CLERK
BY _____ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NOs. 06–cr–20060–01–01;<br>18–cr–00132-01-01 |
| –vs– | JUDGE DRELL |
| EDWARD LEE DAUGHENBAUGH (01) | MAGISTRATE JUDGE KAY |

## RULING AND ORDER

Before the court is a motion to vacate sentence filed *pro se* by defendant Edward Lee Daughenbaugh ("Defendant" or "Daughenbaugh") pursuant to 18 U.S.C. § 2255. (Doc. 89 in 06–cr–20060; Doc. 37 in 18–cr–00132). For the following reasons, the motion is DENIED.

I.     BACKGROUND

A.     **Criminal Activity and Procedural Posture**

In 2006, Daughenbaugh plead guilty to possession of child pornography and was sentenced to eighty-four (84) months imprisonment and a lifetime term of supervised release. In June 2012, Daughenbaugh entered into his first term of supervised release. In January 2016, Officer Cypher, Daughenbaugh's probation officer, filed a petition for a revocation hearing alleging that Daughenbaugh had violated the terms of his supervised release by having unsupervised contact with minor children. Officer Cypher's petition referenced specifically children ages two and four living in Daughenbaugh's home on January 14, 2016. Daughenbaugh admitted to the violation, his term of supervised release was revoked, and he was

1

sentenced to one year and one day of imprisonment and thereafter a lifetime term of supervised release.

In February 2017, Daughenbaugh entered his second term of supervised release. In May 2018, Officer Cypher filed another petition for a revocation hearing alleging Daughenbaugh was in possession of child pornography and was in violation of the terms of his supervised release by possessing a cellular telephone ("cell phone") with internet capabilities and by possessing viewable images depicting sexually explicit conduct. Officer Cypher attested to Daughenbaugh's admission of the existence of child pornography on the cell phone after Officer Cypher inquired. Subsequent forensic analysis of the cell phone confirmed the existence of child pornography on Daughenbaugh's cell phone.

Daughenbaugh was indicted again for possession of child pornography ("2018 charges," Docket No. 2:18–CR–132). He plead not guilty during the initial appearance and arraignment. Subsequently, he decided to plead guilty. During a change of plea hearing on July 26, 2018, Special Agent Eric Link of Homeland Security Investigations testified to the events that transpired between Officer Cypher and Daughenbaugh and to the results of forensic analysis. After a thorough colloquy between Daughenbaugh and the Court as to voluntariness and after Daughenbaugh affirmed his understanding of and agreed to having committed each element as provided in the plea agreement and corroborated by Officer Link's testimony, Daughenbaugh's guilty plea was accepted by the court.

We scheduled the sentencing hearing on the 2018 charge and the pending revocation hearing back to back on October 31, 2018, conducting the sentencing hearing first. There, Daughenbaugh was sentenced to serve one hundred and twenty (120) months imprisonment for the 2018 charge. In the revocation hearing, he was sentenced to serve sixty (60) months consecutively to the one hundred and twenty month sentence for the 2018 charges. On appeal to the Fifth Circuit, Daughenbaugh challenged the reasonableness of consecutive sentences, but the Fifth Circuit affirmed the announced sentence. United States v. Daughenbaugh, 793 F. App'x 237, 241 (5th Cir. 2019) ("Daughenbaugh's conclusory assertion that the resulting combined 15-year sentence is greater than necessary to satisfy the sentencing goals of § 3553(a) is insufficient to rebut the presumption of reasonableness attached to his within-guidelines revocation sentence.").

### B. Instant Motion

Daughenbaugh filed identical motions here and in Docket No. 2:18–CR–132. The identical motions pertain to both the 2018 charge and the revocation proceeding. Because the revocation proceeding revoking Daughenbaugh's second term of supervised release hinges on the 2018 charge, we review both for a consolidated analysis.

Regarding the 2018 charge, Daughenbaugh claims his counsel was ineffective because she failed to assert Daughenbaugh's (A) Fourth Amendment rights against the search of his person and the contents of his cell phone and (B) Due Process rights during the change of plea hearing. Moreover, he claims (C) his guilty plea to the 2018

3

charge was involuntary because it was induced by his counsel's advice that the government had a very strong case. Regarding the revocation proceeding, Daughenbaugh claims (D) the court erred in proceeding (and, oddly, counsel was ineffective for allowing the court to proceed) in revoking the second term of supervised release without obtaining a guilty plea directly from Daughenbaugh for violating the terms of his supervised release.[1]

## II. LAW

There are four grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is otherwise subject to collateral attack. See 28 U.S.C. § 2255; United States v. Cates, 952 F.2d 149, 151 (5th Cir.), cert. den., 504 U.S. 962 (1992). The scope of relief under § 2255 is consistent with that of the writ of habeas corpus. See Cates, 952 F.2d at 151; see also United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).

Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct

---

[1] Daughenbaugh's motion specifically requests habeas relief for (1) counsel's failure to (i) challenge the search of his person and seizure of his phone by Officer Cypher, (ii) the hearsay testimony of Officer Link, and (iii) the chain of custody of the cell phone, and (2) judicial error and counsel's failure to obtain an admission to violating any Special Condition of Supervised Release directly from Daughenbaugh. In his arguments he posits that his guilty plea to the 2018 charge was involuntarily induced because of his counsel's advice regarding the 2018 charge. Because Daughenbaugh proceeds *pro se*, we review each claim as construed, whether or not explicitly listed as a ground for relief.

4

appeal and would, if condoned, result in a complete miscarriage of justice. Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding. See United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992); United States v. Ressler, 54 F.3d 257, 259 (5th Cir. 1995). Moreover, it is settled in this circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 motions. See United States v. Kalish, 780 F.2d 506, 508 (5th Cir.), cert. den., 476 U.S. 1118 (1986); United States v. Fields, 761 F.3d 443, 466, 482 (5th Cir. 2014), cert. den., 135 S. Ct. 2803 (U.S. 2015); United States v. Segler, 37 F.3d 1131, 1134 (5th Cir. 1994).

A collateral challenge may not do as a substitute for an appeal. United States v. Frady, 456 U.S. 152, 165 (1982). After conviction and exhaustion or waiver of any right to appeal, the federal courts are entitled to presume that the defendant stands fairly and finally convicted. See United States v. Shaid, 937 F.2d 228, 231–32 (5th Cir. 1991), cert. den., 502 U.S. 1076 (1992). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice or that he is actually innocent." Bousley v. United States, 523 U.S. 614, 622, (1998) (internal citations omitted). A claim may not be reviewed under § 2255 absent a showing of cause and prejudice or actual innocence. United States v. Cooper, 548 F. App'x 114, 116 (5th Cir. 2013); United States v. Hicks, 945 F.2d 107, 108 (5th Cir. 1991).

5

Absent exceptional circumstances, establishment of ineffective assistance of counsel satisfies cause and prejudice. United States v. Acklen, 47 F.3d 739, 742 (5th Cir. 1995). In a motion to vacate a sentence for ineffective assistance of counsel, the defendant has the burden of proof. See United States v. Chavez, 193 F.3d 375, 378 (5th Cir. 1999) (citing Clark v. Collins, 19 F.3d 959, 964 (5th Cir. 1994), cert. den., 513 U.S. 966 (1994)). To prevail on his motion, Defendant must satisfy the two-pronged test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984): (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defendant.

Regarding the first prong of Strickland, a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time. See Dowthitt v. Johnson, 230 F.3d 733, 743 (5th Cir. 2000), cert. den., 532 U.S. 915 (2001) (citing Strickland, 466 U.S. at 689). Thus, the court's scrutiny of counsel's performance is highly deferential. The court must be particularly wary of arguments that essentially come down to a matter of degree, such as whether counsel investigated enough or presented enough mitigating evidence. Those questions are even less susceptible to judicial second-guessing. See Dowthitt, 230 F.3d at 743 (citing Kitchens v. Johnson, 190 F.3d 698, 703 (5th Cir. 1999)).

Regarding the second prong of Strickland, a defendant is prejudiced if there is a reasonable probability that, "but for counsel's unprofessional errors, the results of the proceedings would have been different." Strickland, 466 U.S. at 689. To make

6

that determination, the court must examine the proceedings as a whole, giving due consideration to the weight of the evidence supporting the verdict and evaluating the alleged failings of counsel in that total setting. The court does not assess any alleged error in isolation.

However, "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000) (citing Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir.1983)). "One claiming ineffective assistance of counsel must identify specific acts or omissions; general statements and conclusionary charges will not suffice." Knighton v. Maggio, 740 F.2d 1344, 1349 (5th Cir. 1984) cert. denied, 469 U.S. 924, 105 S.Ct. 306, 83 L.Ed.2d 241 (1984). "In the absence of a specific showing of how [the] alleged errors and omissions were constitutionally deficient, and how they prejudiced" the defendant, a court will find a claim of ineffective assistance of counsel to be without merit. Barnard v. Collins, 958 F.2d 634, 642 (5th Cir.1992). Further, counsel is not ineffective for failing to raise a meritless claim. United States v. Gibson, 55 f.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions."); Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990) ("[C]ounsel is not required to make futile motions or objections.").

### III. ANALYSIS OF SPECIFIC CLAIMS

#### A. Fourth Amendment and Probationary Status

Daughenbaugh claims his counsel was ineffective for failing to object to or to move to suppress evidence as unlawfully seized. According to Daughenbaugh, his

7

Fourth Amendment Rights were unreasonably infringed when Officer Cypher requested Daughenbaugh empty his pocket after she heard a noise coming from said pocket. If that assertion were correct, such a conclusion could undermine both the 2018 charge and the violations of supervised release.

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).

The Fourth Amendment guarantees protection to individuals "against unreasonable search and seizures." U.S. Const. amend. I.V. "Persons on supervision do not enjoy absolute liberty but only conditional liberty dependent upon observance of special conditions." United States v. Wright, 86 F.3d 64, 65 (5th Cir. 1996) (addressing that a drug test does not violate a defendant's Fourth Amendment rights) (citing Griffin v. Wisconsin, 483 U.S. 868, 874 (1987)). "[R]easonable restrictions upon liberty and privacy are allowed and are necessary to assure that [supervision] serves as a period of genuine rehabilitation and that the community is not harmed by the [supervisee]'s being at large." United States v. LeBlanc, 490 F.3d 361, 365–66 (5th Cir. 2007) (quoting Griffin, 483 U.S. at 875) (internal quotation marks omitted). "These same goals require and justify the exercise of supervision to assure that the restrictions are in fact observed.... Supervision, then, is a 'special need' of the State

8

permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large." Id. at 366. "Although it is usually required that a search be undertaken only pursuant to a warrant ... the Supreme Court has permitted exceptions when special needs, beyond the normal need for law enforcement, make the warrant and probable–cause requirement impracticable." Id. at 365.

"With regard to conducting 'reasonable' searches of [the supervisee], ... the probation agency 'must be able to proceed on the basis of its entire experience with the [supervisee], and to assess probabilities in the light of its knowledge of his life, character, and circumstances.' " United States v. Williams, 880 F.3d 713, 718 (5th Cir. 2018) (quoting Griffin, 483 U.S. at 879). "When an officer has reasonable suspicion that a [supervisee] subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the [supervisee]'s significantly diminished privacy interests is reasonable." United States v. Knights, 534 U.S. 112, 121 (2001). When reasonable suspicion is constitutionally sufficient to conduct a search of a [supervisee]'s person or property, the warrant requirement is not necessary. See Id.; Illinois v. McArthur, 531 U.S. 326, 330 (2001).

Moreover, the plain text of Daughenbaugh's Special Condition Number 13 of Supervised Release required Daughenbaugh to "submit to a search of his person, property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices... at any time, with or without warrant, by any ... probation

9

officer with reasonable suspicion concerning unlawful conduct or a violation of supervised release."

Accordingly, to determine whether Officer Cypher's initial search of Daughenbaugh's person and of the contents of his cell phone was reasonable under the Fourth Amendment, we must determine whether the search was supported by reasonable suspicion. See Williams, 880 F.3d at 720. We conclude that it clearly was.

A parole officer "must be able to proceed on the basis of its entire experience with the probationer, and to assess probabilities in the light of its knowledge of his life, character, and circumstances." Griffin, 483 U.S. at 879; See also Williams, 880 F.3d at 720. Cypher heard a cell phone noise coming from Daughenbaugh's pocket. Daughenbaugh had a long history of downloading and digitally storing images and videos depicting child pornography, a fact which Cypher well knew. Further, Special Condition Number 12 of Supervised Release prohibited Daughenbaugh from possession of a cell phone or other cellular device with internet or photographic capabilities. Under these circumstances, Officer Cypher had sufficient reasonable suspicion to search Daughenbaugh's person to determine if he was in violation of Special Condition Number 12.

Daughenbaugh argues that the cell phone was not in plain sight and therefore beyond Cypher's ability to legally search. We also disagree. Even if applicable, the plain sight doctrine has been expanded to include other senses. Cf. Minnesota v. Dickerson, 508 U.S. 366, 369–372 (1993); State v. Gray, 122 So. 3d 531, 533 (La. 6/28/13); United States v. Carey, 836 F.3d 1092, 1093–94 (9th Cir. 2016). Absent any

other basis to conduct a search of Daughenbaugh's person, Officer Cypher heard something in Daughenbaugh's pocket. Thus, under the circumstances discussed above Officer Cypher had reasonable suspicion under a plain hearing basis to search Daughenbaugh's person.

Having determined that the search of Daughenbaugh's person was supported by reasonable suspicion, we now address whether the Calcasieu Parish Sheriff's Office analysis of the contents of Daughenbaugh's cell phone was supported by reasonable suspicion. It was.

Officer Cypher attests to Daughenbaugh's admission that the discovered cell phone contained images of child pornography. Such an admission would have in any circumstance given the Calcasieu Parish Sheriff's Office probable cause to search the contents of Daughenbaugh's cell phone. Independent of Daughenbaugh's admission, we find that the Calcasieu Parish Sheriff's Office also had reasonable suspicion to search the contents of Daughenbaugh's cell phone. Daughenbaugh had a long history of downloading and digitally storing images and videos depicting child pornography and was found in possession of a cell phone with internet and photographic capabilities in violation of Special Condition Number 12.

Having determined that the search of Daughenbaugh's person and cell phone was supported by reasonable suspicion and authorized by a condition of Supervised Release, we find that the warrantless search of Daughenbaugh's person and analysis of his cell phone was reasonable within the meaning of the Fourth Amendment. Accordingly, any objection to or motion to suppress evidence of Daughenbaugh's

possessing a cell phone as unlawfully seized would have been meritless against either the revocation of supervision or the 2018 charge. His counsel was thus not ineffective for failing to raise the meritless objection or motion. <u>Gibson</u>, 55 f.3d at 179; <u>Koch</u>, 907 F.2d at 527.

## B. Due Process

Daughenbaugh secondarily claims his counsel was ineffective for failing to challenge the chain of custody of the cell phone from confiscation to forensics, and for failing to challenge the testimony of Officer Link as hearsay regarding Officer Cypher's account of events, and, alternatively, that error occurred because he was not provided an opportunity to cross-examine Officer Cypher during the guilty plea hearing.

Daughenbaugh's guilty plea was not a trial. As a procedural safeguard during guilty pleas, this Court requires testimony from a live witness to support a guilty plea in addition to the admission of guilt and any other factual stipulations. The Court also allows for the examination of the witness by counsel. It is merely an extra step by the Court to ensure the defendant understands the case against him before the Court finally accepts his guilty plea. There is no requirement for such evidence to be presented against the Defendant in Rule 11 of the Federal Rules of Criminal Procedure. Nor is hearsay *per se* prohibited. Fed.R.Evid. 803. Further, a guilty plea is an admission of all the facts well pleaded in the indictment, and no actual proof is necessary beyond that plea. Daughenbaugh entered into and signed a plea agreement with an understanding that in so doing he would stand convicted and

waive his right to trial, to confront witnesses, and compulsory process. Here, Daughenbaugh's guilt was established by virtue of his completely voluntary guilty plea, supported by the recorded transcript of the hearing.

Absent extenuating circumstances (neither in the record nor alleged by Daughenbaugh), his attorney's not raising due process objections during the guilty plea proceeding was consistent with Daughenbaugh's express intent to enter his guilty plea. This is not deficient performance even in the least. If Daughenbaugh had wanted to challenge the chain of custody of the cell phone or cross-examine either Officer Link or Officer Cypher, he could have insisted on going to trial or otherwise have brought the issue up at the time of his voluntary and knowledgeable guilty plea.

### C. Voluntariness of Guilty Plea

Daughenbaugh likewise claims that his guilty plea was involuntary entered because of his counsel's alleged failure to raise Fourth Amendment and Due Process objections. Having already determined that counsel's performance was not deficient, we can safely deny habeas relief on this claim. United States v. Stewart, 207 F.3d 750, 751 (5th Cir. 2000) ("A court need not address both components of an ineffective assistance of counsel claim if the movant makes an insufficient showing on one.")

Nevertheless, Daughenbaugh has not established that he was prejudiced in any way. To demonstrate prejudice after a defendant enters a guilty plea, the defendant must show "that there is a reasonably probability that but for counsel's errors, the defendant would not have plead guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). The defendant "must convince the

13

court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010). The court must "focus on the defendant's decisionmaking." Lee v. United States, 137 S. Ct. 1958, 1961, (2017). However, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Id. at 1967. "Factors relevant to determining whether a defendant would have gone to trial can also include 'the risks [he] would have faced at trial,' his 'representations about his desire to retract his plea,' and 'the district court's admonishments." United States v. Valdez, 973 F.3d 396, 403 (5th Cir. 2020) (quoting United States v. Batamula, 823 F.3d 237, 240 n.4 (5th Cir. 2016)).

Regarding this court's admonishments, Daughenbaugh claims that his guilty plea colloquy was undermined by following his counsel's advice to not upset the judge, to agree to everything, and to go with the flow. Accordingly, we look to other contemporaneous evidence to determine whether there was a reasonable probability that he would have rejected the plea and proceeded to trial. See Lee, 137 S. Ct. at 1968, n4 (2017) (recognizing that several circuit courts, including the Fifth Circuit, "have noted that a judge's warnings at a plea colloquy may undermine a claim that the defendant was prejudiced by his attorney's misadvice," but declining to follow because counsel's "advice specifically undermin[ed] the judge's warnings themselves").

14

"The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea." Lee, 137 S. Ct. at 1966. The floor of Daughenbaugh's sentencing exposure at one hundred and twenty (120) months was set by statute because it exceeded a non–mandatory guideline range. The ceiling of Daughenbaugh's sentencing exposure at two hundred and forty (240) months set by statute was itself within the discretion of the Court to impose. These facts do not change even if Daughenbaugh had proceeded to trial. Neither of these sentences are *de facto* life sentences. While his sentencing exposure was subject to certain discretion of the Court regardless of his pleading guilty or proceeding to trial, it is significant that trial risked the Court's discretion to lean toward the statutory maximum. The only likely rational reason to proceed to trial here would have been to seek acquittal, notwithstanding his right to go to trial for any other reason.

Acquittal, however, was an extremely unlikely outcome. His Fourth Amendment defense is without merit. He does not deny possession of either the unauthorized cell phone or the existence of child pornography on the unauthorized cell phone. He does not allege that the government tampered with his phone or otherwise added child pornography to form the basis of its case. He presents no new evidence or argument to suggest that a reasonable juror would doubt either the chain of custody or the testimony of Officers Cypher and Link. In short, viewing the evidence in the light most favorable to Daughenbaugh, he had no viable defense. See Lee, 137 S. Ct. at 1966 ("[A] defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea...").

In sum, the government's case was a slam dunk, Daughenbaugh's defense was without merit, no new evidence or argument is presented in the motion to undermine the government's case, and the trial risk increased sentencing exposure subject to the discretion of the sentencing court. Against this backdrop, we do not find that it would not have been rational to reject the plea bargain and proceed to trial. Padilla, 559 U.S. at 372. Therefore, we do not find that Daughenbaugh was prejudiced in any way.

### D. Revocation Without a Guilty Plea

The revocation proceeding followed IMMEDIATELY AFTER the guilty plea, and there was no interruption between the two proceedings. During the revocation hearing, the defense was asked if there were any contests to the allegations that Daughenbaugh violated Special Conditions of Supervised Release number eleven (11) prohibiting the possession of cellular telephones with internet capability and number twelve (12) prohibiting the possession or viewing of any image that depicts sexually explicit conduct. His counsel replied that there was no contest. Then the defense was asked if Daughenbaugh admitted to violating Special Condition Numbers eleven (11) and twelve (12) of the supervised release. Daughenbaugh's counsel replied affirmatively. Now, Daughenbaugh further claims this court erred, and that counsel was ineffective for failing to object to the error, by proceeding to revoke his term of supervised release without obtaining an admission to violating terms of supervised release directly from Daughenbaugh. We find, however, that Daughenbaugh's claim is critically flawed.

"If the court determines that a defendant has admitted the alleged violations of supervised release, 'the procedural safeguards announced in Morrissey [v. Brewer, 408 U.S. 471, 488–89 (1972)] are unnecessary,' except that the defendant 'must still be given an opportunity to offer mitigating evidence suggesting that the violation does not warrant revocation.' " United States v. Jimenez-Laines, 354 F. App'x 889, 893 (5th Cir. 2009) (citing United States v. Holland, 850 F.2d 1048, 1050–51 (5th Cir.1988)). By virtue of his guilty plea to the 2018 charge, Daughenbaugh admitted to violating Special Condition Number 12. A violation of Special Condition Number 11 is established by the evidence against Daughenbaugh supporting the 2018 charge. With this backdrop, we find it implausible and inconceivable that if asked directly, Daughenbaugh would have denied violating the Special Condition Numbers 11 and 12.

Moreover, Daughenbaugh was given an opportunity to offer mitigating evidence that the violation did not warrant revocation. Daughenbaugh's counsel offered mitigating evidence during the sentencing hearing arguing for concurrent terms in sentencing and revocation. Thereafter, the mitigating evidence presented for concurrent terms was incorporated in the revocation proceeding. Accordingly, we were not required to directly ask and obtain from Daughenbaugh an admission to having violated the terms of supervised release. Such violations were obvious, but in any event were proven during and by his contemporaneous guilty plea.

## IV. CONCLUSION

For the reasons enumerated above, it is hereby **ORDERED** that Defendant's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (Doc. 89) is **DENIED**.

**THUS DONE AND SIGNED** at Alexandria, Louisiana this 5th day of August 2021.

DEE D. DRELL, JUDGE
UNITED STATES DISTRICT COURT